Case number 24-2711 from Eastern Arkansas. Nauh Na'im v. James Beck et al. All right, very well. Mr. Alanya, we'll recognize you first. Thank you, Your Honor. It's good morning. Steve Alanya from Wash U Law's Appellate Clinic. And I have the pleasure of introducing the law students appearing under this court's Rule 46B. So behind counsel's table is Ashraqat Hassan and Zachary Iravondo. And then presenting argument on behalf of the appellant this morning is Beverly Lobo. Very well, thank you. Ms. Lobo, we'll hear from you first. May it please the Court. The District Court erred in entering summary judgment against Mr. Na'im because Mr. Na'im grieved the lack of timely care for his injured finger and the prison denied his grievance on the merits. Under this court's precedent in Hammett v. Coffield, that is exhaustion. Now defendants Beck and Nunag admit that Mr. Na'im exhausted claims against them but convinced the District Court to make an incorrect inference that Mr. Na'im's exhausted grievance was not about the lack of timely care but rather about a specific medical encounter on May 19, 2021. The case law, Mr. Na'im's grievance form itself, and the prison's own grievance policy do not support this made-for-litigation reading of the grievance. On summary judgment, the District Court was not permitted to draw any inferences in favor of the defendants. Therefore, this court should vacate the District Court's summary judgment orders so Mr. Na'im has an opportunity to prove his exhausted claims on the merits at trial. Now, Your Honors, the failure to exhaust is an affirmative defense. This means that the defendants must prove that this grievance is limited to May 19. They have not and cannot carry that burden here. And that's because the record demonstrates that Mr. Na'im was grieving the lack of timely care and not the May 19 visit. The lack of what? The lack of timely care. Timely care? Yes, Your Honor, that's right. Where does the grievance identify who supposedly deprived him of timely care between May 12 and May 19? Sure, Your Honor. So the prison itself includes defendants Beck and Nunag and refers to these various instances on which Mr. Na'im did not receive care. And throughout this time period, Mr. Na'im Hold on, I just want to make sure I'm following. You say the prison, you mean in the response to the grievance? Yes, Your Honor, that's right. All right, so you're not claiming that the grievance identified anyone, but you say the response did so. Are you talking about the health service administrators? Yes, Your Honor, that's exactly right. On page 59 of the joint appendix. Okay, she says he alleged that the infirmary allowed him to go unseen. And then she says there was no delay in treatment. So my concern is whether that's an allegation against the infirmary. And the decision maker says the infirmary did not delay, but there's no person specified. Yes, Your Honor, that's right. There's no person specified, but defendants Beck and Nunag have admitted that they are the proper defendants in this case. And so that's because they were part of providing Mr. Na'im with this care that Mr. Na'im alleges was not timely. I understood them to admit they're the proper defendants for what they did on the 19th. Sure, Your Honor. I'm still focused on this period before that where you say there was lack of timely care. Yes, Your Honor, so the entire time period from May 12th to June 24th is the time period that we're alleging. And when Mr. Na'im was grieving on May 17th, he hadn't seen anybody. So there was nobody to direct this lack of timely care complaint towards. He says on page 58 of the appendix, I'm still in severe pain and not in use of my hand. So he hadn't been seen by anyone, so he couldn't really be naming anybody. And this court has said in Perry v. Precite that plaintiffs are required to only name what they know. And at that point, Mr. Na'im didn't know the defendants. He didn't know anybody because he had not been seen. And then as the grievance process progresses, the prison itself introduces these new names and these new dates, and Mr. Na'im continues to respond to them. When you say he hadn't seen anyone, didn't he see some person on May 12th? Sure, Your Honor. So he saw the x-ray technician. That's right. He saw an x-ray technician? He saw an x-ray technician who said that he needed to be seen by a doctor, and then that was further delayed. And then when he met defendants back in Nunag on May 19th, again, there was a further delay because defendants back in Nunag admitted that he needed to see a person who was an expert in his injury, and that he wasn't seen again until June 14th. So that's the entire time period of the lack of timely care. If we look at those dates, and we look at our law of deliberate indifference, you know, there are a lot of things that are merely negligent, that are malpractice, that are not deliberately indifferent. And if you look at the standard that we applied generally, have applied generally in deliberate indifference cases, it is a heightened standard akin to criminal recklessness, right? Yes, Your Honor. Okay. And so what evidence is there in this case that that type of – I mean, you've established that the passage of time goes without this being reduced and treated. The question is, is that what evidence is there that this is something beyond mere malpractice? Sure, Your Honor. So there is evidence both in the May 19 visit and the entire time period that this is beyond just malpractice. And you refer to this court's precedent. So in Croft v. Hampton, this court said that a physician who provided a splint for a fracture but did not refer the inmate to an orthopedist for three days could have been deliberately indifferent. And that's what happened here. The defendants manipulated Mr. Naeem's finger but then didn't actually refer him to a provider until June 14th, almost a month later. And so under this court's precedent, even on May 19, the defendants were deliberately indifferent. But to really get to the full scope of the deliberate indifference, we have to look beyond May 19, and that's why this court needs to reverse the erroneous decision of the district court. Yes, Your Honor. And there's sort of two reasons that the defendants point to to suggest that this is not about the lack of timely care about May 19. And the best that they can do is to come up with this deputy director statement on page 61 of the appendix, which says that according to the grievance policy, an appeal cannot raise new or additional complaints. And they try to argue that this statement is sufficient to say that the prison did in fact dismiss Mr. Naeem's grievance for procedural issues. Under Hammett, once a grievance is adjudicated on the merits, then the prison itself cures that grievance of all procedural defects. So any procedural defects that defendants are pointing to are not sufficient to suggest that Mr. Naeem did not exhaust. Well, but it would depend what was resolved on the merits and what was resolved on the grounds that you cannot raise new or additional issues. Yes, Your Honor, that's right. Okay, so then what do you think was resolved on the merits? And what specifically in the decision are you relying on to say that this whole time period was considered? Yes, Your Honor, that's a good question. And I think when we're looking at the entire grievance, nowhere in the grievance is the prison responding to just May 19. Throughout this time period, they're responding to the lack of timely care. They even say in the health services response on page 59, you have been seen and received treatment for your finger injury. There was no delay in treatment. That's them treating this as a delay in treatment case and not as a May 19 medical visit. Additionally, if you see on page 57 of the appendix in the grievance summary record for Mr. Naeem, they classify this grievance as sick call not seen timely. On previous instances, they have classified it as a medical visit or a dental visit. So if this was just about May 19, they would have classified it as such. Additionally, Mr. Naeem filed his grievance on May 17. And under the prison's procedures, future events, which would have been this May 19 visit, are non-grievable issues. So on May 17, Mr. Naeem could not have been complaining about this future event. Now, given that this is an affirmative defense, and all that the defendants can point to is the deputy director's statement, that's not sufficient to meet their burden to prove that this was about May 19. And for those reasons, we think that this court should reverse, and I'll save the rest of my time for rebuttal. Thank you. Very well. Thank you for your argument. Mr. Terry, we'll hear from you. Thank you very much, Mr. Chief Judge and Judge Shepard, Judge Erickson. It's a pleasure to be before you today. My name is Rex Terry from Fort Smith, Arkansas. I represent the defendants in this case who are often referred to in the lower court as the medical defendants. Two of them were treated differently, as you know. There were two motions for summary judgment below. In the first one, Your Honors, the magistrate who was presiding, Judge Ray, recommended, and Judge William Wilson, of blessed memory, he passed away just a few days ago, adopted it. And those claims were dismissed, one with prejudice. It was a motion to dismiss on narcissism. The others against Green and Newby were dismissed without prejudice, and they were terminated from the case. We only have ten minutes. Why don't you get to the two defendants who were at issue here. The two defendants, Dr. Beck and Nurse Nunag, were the ones that were on hand on the date in question, which we concede that grievance was exhausted, that one dealing with May 19th. There's no question about that. Right. So let's talk about the rest. The problem is not in the objective injury that this gentleman may have had, but in the alleged conscious indifference to that injury. We filed a motion for summary judgment. We proceeded by the rules. We filed an undisputed statement of facts. None of those facts were responded to except in conclusory fashion, and with the plaintiff just attempting to argue that he was still in pain, still hurting. We filed, in support of the motion for summary judgment, an affidavit from a medical physician who confirmed that the care was appropriate. We cited all that in our brief. And you're only arguing on appeal that the district court was correct on exhaustion, as I understand it, and that there was no deliberate indifference on the 19th. Yes, sir. I believe that's all that's really properly before the court argued. Well, they could have argued alternatively even if they have exhausted the rest of the time period. There was no deliberate indifference in those periods, but I don't believe you argued that. We did not argue that in all candor. I believe the magistrate's ruling was very clear on that, because there's just no finding of any improper treatment. I don't know what you mean by that. But as I understand it on appeal, you didn't make the alternative argument on the merits. So I was hoping you could address exhaustion and whether anything other than the actions on the 19th were exhausted, either by the grievance or by the decision of the prison officials. On the exhaustion issue, Your Honor, as I understand the decisions below, that summary judgment was granted, but it was without prejudice. In other words, I believe the magistrate had in mind that Mr. Naeem would go forward and make an appropriate grievance, which he did not do. That may be what he had in mind, but the argument on appeal is that the district court was wrong because the broader time period was exhausted. Yes, sir. Okay. That's stated in our brief. You just want to rely on your brief on that point? No, I believe you're correct. I believe that's the argument on appeal. Okay. Well, what do you have to say about the argument that this decision by Carol, the health services administrator whose last name is illegible to me, and the decision by Mr. Griffin allegedly cured the exhaustion problem, I guess you'd say, by deciding on the merits that there was no proper delay and so forth? Your Honor, I'm going to be very candid with you. If I had written the brief on appeal knowing then what I know right now, I would have made that argument because I think the argument would have been appropriate. And I just have to stand here before the court and say I can't go outside our brief and I understand that. But I believe that they did deal with that, frankly, on the merits because that's the way the decision seemed to be written to me. But I will say on the exhaustion issue, that was a without prejudice dismissal on that one. And now on the two medical, Dr. Beck and Nurse Nunag, that was a dismissal with prejudice on a motion for summary judgment. And our argument there is that we presented appropriate information on it and based on the information the court had before it, it made the right call. The most significant- I can't understand your argument. You may be conceding that the district court was wrong in what you just said, but it's too unclear for me to take that as a concession. I'm just struggling with whether this document really decided more than what Nunag and Beck did on the 19th. There's talk about delay, but it isn't connected to any person as I read it. And there's talk about the whole scenario through the 24th, but then there's a line about how an appeal can't raise new issues. So there's a possibility that the decision maker was just reciting everything and then saying, but you can't raise those points. But anyway, I'm not sure you're really tracking my-I'm not sure you and I are communicating. I apologize, Your Honor. Well, no, you don't have to apologize. Go ahead with your argument. I just-suffice to say, that second decision was a dismissal with prejudice. The information we submitted to the court was uncontroverted. Mr. Naeem was unable to show with his showing that anyone knew and completely disregarded his need, which is the second prong of the test. As you pointed out in a question you asked counsel, there was not any indication of identification of people. And that is in the prison grievance procedure, that's one of the things that has to be done, proper identification. And I think those requirements seem onerous to me just personally, but the Prison Litigation Reform Act is rather severe on that and demands that those types of things be done. You mean it's onerous to require the grievant to identify the person against whom he's grieving? It seems to me onerous just from a personal standpoint.  Why shouldn't the person be unnoticed that he's subject of a grievance? Because the person who's being treated may be in a situation where he or she does not know who's treating him in a context of a prison infirmary. That's all I'm suggesting. Certainly to someone that's not familiar with dealing with the PRLA, that seems to be a very high burden. But Congress intended it to be high, apparently, as the Supreme Court has pointed out on occasion. I thought the most significant case I've read about alleged medical negligence, medical mistreatment that involved a situation far worse than the one at bar is this court's decision in the Allard case, which was in 2015. There the court just plainly came out and said that medical negligence was not enough to support a 1983 action. And the gentleman there was dealing with a far worse procedure that involved a perforated bowel and a colostomy that he had to wear for several months. Far, far removed from what we have here. But the seriousness of the injury cannot be the driving factor on whether or not there's been deliberate indifference. Deliberate indifference focuses on the conduct of the medical providers or the failure to act on the part of the medical providers, right? So what we're really looking at is the egregiousness of the failure to act in a more prompt manner on the part of the medical providers rather than the seriousness of the injury. Now, the seriousness of the injury may in fact color the duty the physician has. Because, I mean, obviously if you've got a life-threatening condition, it's different than if you've got something that's quite minor, right? But that's what we need to focus on. And so what I'm really saying is that what did these physicians do or not do that showed that they were just, if at the most they are as negligent and committed malpractice, why was that malpractice not deliberate indifference given the length of time that passed? Your Honor, for the same reason that in Allard it was not considered. Because the conduct there was far worse from the medical standpoint. It resulted in surgery and lots of pain and suffering for several months. If that type of medical conduct does not support a claim, then certainly trying to reset a dislocated little finger would not qualify. I'm sorry, but that just wouldn't get us there. And are you saying that given the nature of the injury, it never gets to deliberate indifference? No, I'm not saying. Due to the nature of the doctor's care, that's what we have to focus on. Did they consciously know that he had a problem and deliberately almost criminally disregard it? There's just no evidence that that happened in this case. The Hammett v. Caulfield case is one on which Mr. Knight, I'm sorry I'm out of time. I apologize. Very well. Thank you for your argument. Thank you. We'll hear a brief rebuttal. Ms. Lobo, you may proceed. I'd like to return first to your question, Chief Judge Colitane, about whether the decision-maker could have been, at the final step, dismissing these new issues on appeal. Go ahead, because he does say that right in the decision. Sure, he does say that, Your Honor, but that statement can be interpreted multiple ways, and on summary judgment it should not have been interpreted in favor of the movements, that's the defendants. A case that's helpful here is a case that we've briefed out of the Eastern District of Arkansas where the district court is applying the same summary judgment standard to a very similar statement, where there's an acknowledgment of a procedural defect and then an adjudication on the merits. And in that situation where an inference can be drawn in favor of the movements and also drawn in favor of the non-movements, then it must be drawn in favor of the non-movements, which would be Mr. Naeem. So the statement cannot be about them procedurally dismissing. Additionally, yes, Your Honor. Well, I want to understand that argument. Where in this decision by Mr. Griffin do you think he decided on the merits, whether there was unreasonable delay from May 12 to June 24? Sure, Your Honor. So he does, in fact, say at the end, I find this grievance without merit. Now, under the prison's procedures, which you will see on page— No, wait a minute. I don't see that statement. Right at the end of his statement he says— This appeal is without merit. This appeal is without merit. That's right. Yeah, but that comes right after a sentence that says, the medical department appropriately addressed your complaint as you were seen in sick call on May 12 and referred to the provider, which you were seen by on May 19. Therefore, this appeal is without merit. Why doesn't that show that he's limiting his decision to the earlier period? Sure, Your Honor. That could be one reading of that statement. But the other reading under the prison procedure is that if the deputy director was, in fact, dismissing on procedural grounds, he would have had to provide Mr. Naeem with a form to say that he was rejecting the grievance for procedural defects. That's on page 50 of the prison procedures. And so given that he didn't provide that, all we have is the single statement. And from the single statement we can't draw the inference in favor of move-ins. And if that's all the defendants can point to as their affirmative defense, then that's not sufficient to meet their burden. Does this policy you're referring to on page 50? Yes, of the joint appendix. Does it require this form to be distributed if a grievant tries to raise new issues on an appeal? Yes, Your Honor, it does. It says in that policy that the deputy director must notify the inmate of the reason for rejection and provide them with the rejection of appeal form, which is not what happened over here. We'll look at it. Thank you. Thank you. We ask this court to vacate. Thank you. All right, very well. Thank you to both counsel. The case is submitted and the court will file a decision in due course. That concludes the hearing.